Holland, Adm'r, vs. Rogers.

---

## HOLLAND, ADM'R VS. ROGERS.

1. EVIDENCE. *Pleadings as.*
   Where there is an amended complaint filed in a cause, the original can no longer be used as evidence in its original state; the pleadings as amended must be considered altogether.

2. SAME. *Construction of pleading.*
   A complaint alleging an indebtedness "for the sale, release of a tract of land," and "for lands sold and conveyed and released, etc., does not necessarily imply a conveyance with general warranty. Where the whole transaction discloses that the vendor was to convey any such interest as he had, a deed of "bargain, sale or quit claim" of his interest in the land is sufficient, and admissable as evidence under the allegations of the complaint.

3. DEEDS. ————

A simple bargain and sale of land in writing, in words of the present, and upon sufficient consideration is a conveyance, transmitting the title from the grantor to the grantee, with or without covenants of warranty, and is no less a conveyance because it contains also clauses of quit claim or release.

4. AGENCY. *Proof of by statements of agent.*

The transactions and declarations of an agent, are not of themselves evidence of his agency as against the principal.

ERROR to *White* Circuit Court.

Hon. J. J. CLENDENIN, Circuit Judge.

*B. D. Williams*, for plaintiff in error.

*Coody, contra.*

EAKIN, J. :

After the case of *Watkins, surv.* v. *Rogers,* 21 Ark., 298, was remanded; the plaintiff by leave of court, amended the declaration by striking out the words, " a good and sufficient deed " of conveyance, and inserting the words " a quit claim deed." Mrs. Walker having died pending the appeal, the suit was revived against John G. Holland, appointed administrator *ad litem* for the purpose. Afterwards on the 3rd of November, 1869, the plaintiff took a non-suit, procured the appointment of said Holland as regular administrator, and on the 20th of January, 1870, presented to him the same claim which had been in litigation, as follows :

" Mary J. Watkins, alias Walker, (Estate of)

" To Thomas J. Rogers, Dr.

" To amount agreed to be paid for the sale, release of tract of land, to-wit: The northeast quarter of section 8, township 6, north range 9 west, being the amount of claim due from Alex. S. Walker, her former deceased husband, to the said Rogers ..................................... $ 358 19

Interest from December 12th 1856 until December

12th, 1869, fifteen years at 6 per cent........ 279  38
                                                    ————
                                                $ 637  57"

Holland, Adm'r, vs. Rogers.

This account after litigation, was allowed and classed by the Probate Court.    Holland appealed to the Circuit Court, when it was submitted to the court sitting as a jury.

The court found as facts, that Mrs. Walker, through her agent Bond, applied to the plaintiff to purchase a piece of land which she had formerly owned, but for which plaintiff had a tax deed, to enable her to perfect a contract for the sale of the same lands to Stamps.   That she agreed to pay plaintiff the same amount which he paid for the lands, and also the amount which her former husband, Alex. Walker, owed him.   That for this consideration, he sold to her the land, and conveyed it by quit claim deed, which she accepted.   That the amount of plaintiff's claim, including the debts due from Alex. Walker, and the sum paid for the tax title, agreed to be paid by her, was $350, which remained unpaid.   Judgment was rendered accordingly.   Motions for a new trial, and in arrest were overruled, and an appeal taken with bill of exceptions.

The first, second and third grounds of the motion for a new trial, embrace the admission in evidence of the quit claim deed from plaintiff to Mrs. Walker; the amended declaration in the former suit; the tax deed of the sheriff to plaintiff, and a certain other deed executed by William G. Turner, as trustee, to J. W. Stamps, to all of which defendant objected on the ground that they did not show a full and sufficient conveyance without which the plaintiff should not recover.

The defendant had read as evidence, the original declaration for this purpose.   It was certainly allowable to the plaintiff to show that the declaration was afterwards amended.   It could no longer be used as evidence in its original state, to bind the plaintiff, or the whole benefit of the amendment would be lost.   The court allows or disallows amendments to pleadings in its discretion, but after allowance, the pleadings stand as amended, in place of, or supplemental to those originally

filed, and must be considered altogether. The object of amending is to correct mistaken, improvident, or imperfect allegations, and to allow the pleader to stand on grounds better considered.

Plaintiffs deed to Mrs. Walker, bore date of 12th December, 1856. It was for the expressed consideration of $100.00, for which it went on to declare, "I have bargained, sold and quit claimed, and by these presents do bargain, sell and quit claim unto the said Mary J. Walker, and her heirs," etc., "all my right, title, interest, estate, claim and demand, both at law and equity, and as well in possession, and in expectancy of, in and to all," etc., describing the land.

The sheriff's deed to plaintiff, was in ordinary form executed on the 26th day of March, 1857, reciting the tax sale on the 12th day of March, 1855, and the purchase by plaintiff of said lands for the taxes, etc., for the years 1836 to 1854.

The other was a deed executed on the 21st day of January, 1859, by William G. Turner, as trustee for Quarles, and his wife Emily Sophronia, and Thomas Watkins, conveying to Stamps, certain lands which he had contracted to purchase of Mary J. Walker in her lifetime, including those in question. As to this deed, it may be said in passing, that its bearing *pro* or *con* in this case is not apparent. The relations of Mary J. Walker, to the parties in it are not disclosed. Its admission cannot have affected either side.

As for the rest, they were properly admitted to show the consideration for Mrs. Walker's promise. This was not like the former suit. No special contract had been set up as in that, of a consideration precedent to be performed on plaintiffs part; his account filed, and a complaint which he thought it proper to file in the Probate Court, was for a sum of money for the "sale, release of tract of land," and for "lands sold and conveyed and released," etc.

This language, descriptive of the consideration, did not imperatively demand proof of its strict technical accuracy, and if it had, it did not necessarily imply a conveyance with full warranty.   In common parlance sales of land, and conveyances in accordance therewith, often mean sales of such interest as the vendor has.   When a strict compliance with a contract to convey is demanded, the best practical rule of construction is well laid down in *Witter* v. *Briscoe*, 13 Ark., 422, as follows:

" Where a party agrees to convey land, and there is nothing said as to the nature and extent of the title to be conveyed, nor anything connected with the transaction, going to indicate the particular species of conveyances intended ; the law implies a deed in fee simple, and with covenants of general warranty."

Here the whole transaction is disclosed.   The plaintiff had bought lands of Mrs. Walker at tax sale.   She had contracted to sell them to Stamps, and desired to perfect the title.   She did not require, for this purpose, any other conveyance from plaintiff than of such interest as he had acquired by the Sheriff's deed.   That put her *in statu quo* ; as she would have been if she had paid the taxes, and as she was with regard to the other lands.   It is not reasonable to suppose that a conveyance with full warranty was intended.

A simple *bargain and sale* of land, in writing, in words of the present, and without any more is a conveyance, operating under and by virtue of the statute of uses, always upon sufficient consideration.   It was devised in England, as a common assurance, soon after the passage of the statute (see Blackst. Com. Book 2, p. 338) and has become the most common mode of conveyance in the United States.   It is more than a quit claim, or a release ; it actively effects a divestiture of title from the grantor, and transmits it to the grantee, with or

without covenants of warranty, and it is no less a *conveyance* in the strictest sense because it may also have clauses of quit claim or release. It comes within sec. 832 of Gantt's Digest, and passes to the grantee any after acquired title of the grantor. At least in the present case there can be no question of its efficacy in this respect, as such was its obvious intention, expressed upon the face, The deeds were properly admitted.

It is objected that the plaintiff was, himself, permitted to testify; and also that he was permitted to prove Batte's agency for Mrs. Walker, by Batte's statement to himself. His testimony, in substance, was, that Mr. Bond came to see him about the land and *it was agreed between them*, that if Mrs. Walker would pay him what Alexander Walker owed him, and what he had paid for the land, he would let her have it. The amount of his account against Walker, for land and all, was about $350. He and Bond counted it up. He had several notes and book accounts. None of the notes were payable to himself. He did not remember the cost of the land, but knew when he was talking with Bond. Batte brought him a deed and he signed it, the same read in evidence. He came in right of Mrs. Walker. She was at Batte's house at the time, and Batte came directly from there, and stated that he represented Mrs. Walker. Batte is dead. Mrs. Walker never raised any objection to the deed. In connection with this, Bond in his testimony said, that he went to see plaintiff at Mrs. Walker's request; that Rogers told him Mrs. Walker could have the land, if she would pay what it cost, and what Alexander Walker owed him. He reported that to Mrs. Walker, and she said she would do it. Witness was not her agent generally. He did not recollect that he reported her acceptance back to plaintiff, nor does he state whether he informed her or not of the amount of the debt, or in what it consisted. The plaintiff does not state in his testimony how,

or through whom or when his proposition was accepted. His theory of the matter, seems to have been that the transaction was closed by the interview with Bond.

It was not improper to receive this evidence for what it might be worth to the court. It did not apply to any personal communications, or transactions with Mrs. Walker. In other respects his competency was not affected, as has been repeatedly held. The transactions with Bond and Batte, and their declarations were facts—parts of the *res gestae*—but not of themselves competent to prove the agency of either party. That required proof *aliunde*, and when proven, might be connected with their declarations. The court was fully warranted by the circumstances in concluding that Batte did, in fact, represent Mrs. Walker in accepting the deed. She was at Batte's house, and Batte came from his house to plaintiff; procured his signature to the deed; and, afterwards it was placed upon record. There was no objection from her then, or thereafter. That Bond acted for her in asking propositions from plaintiff is well proven.

Other grounds of alleged error relate to declarations of law by the court and findings of fact. The points involved in them are sufficiently covered by this opinion, and do not require further notice.

Although it sufficiently appears that at the time plaintiff had the conversation with Bond, he was the owner of the notes against Walker, and estimated them as a part of the debt due him from Walker, there is a total failure of proof that Mrs. Walker was ever advised by Bond or anyone else of that fact, or that she ever notified plaintiff of her acceptance of the terms proposed by him to Bond. Perhaps, if she had, she would be bound by them in full, and held accountable for communications made to Bond in her behalf. But there is no proof on that point.

It seems also, that Walker, whose estate was insolvent, owed plaintiff a small individual debt—about $20. The cost of the land was about $80. The deed prepared in Mrs. Walker's behalf and brought, by Batte, to plaintiff for execution, expressed the consideration of $100. He executed it without objection or any explanation made to Batte. No circumstance is shown, to affect Mrs. Walker with any knowledge of other debts, or even to put her on enquiry. Bond merely says that he told her she could get the land by paying what Alex. Walker owed, and the cost of the land. She remarked that she would do it. It is fair to presume she had in mind only the individual debt of her deceased husband, and meant only to assume that. She got the benefit of the deed, was enabled to complete her contract with Stamps, and ought to be held accountable for all she agreed to give, but not for outstanding debts of her husband, which for all that appears, she knew nothing of. Bond was not her agent to contract. He did nothing that would have bound plaintiff to make the deed, or that can now bind her with his private knowledge of circumstances not communicated.

We think the court below erred in finding that these notes constituted a part of the debt she agreed, or ought, to assume. There is no positive proof, nor, outside of the deed, any strong presumption, of the assent of the minds of the parties in the terms of any contract of sale, so far as regards the amount to be paid. In such cases, at law and in the absence of proof of fraud or mistake in equity, the deed itself must give the terms of the contract. The judgment upon the proof should not have exceeded the amount paid by plaintiff for the land, and the individual debt of Walker, with interest at 6 per cent. For such excess it is erroneous.

Let it be reversed, and the cause remanded for a new trial.